UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



**BRENDA CARTER,**

        **Plaintiff,**

v.                              Civil Action No.: 2:11cv665

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Brenda Carter's ("Plaintiff" or "Carter") Objections to the Report and Recommendation of the Magistrate Judge. Doc. 14. For the reasons explained below, the Court **OVERRULES** Carter's objections and **ADOPTS** the Magistrate Judge's Report & Recommendation ("R&R"). Doc. 13.

### I. BACKGROUND

Plaintiff does not object to the recitation of the procedural background of this case contained in the R&R, which sets forth, <u>inter alia</u>, the following facts.

*A. Procedural History*

Plaintiff filed an application for disability insurance benefits ("DIB") with the Social Security Administration ("SSA") on May 14, 2008, alleging a disability onset date of July 31, 2006. R&R at 1. The application alleged that Plaintiff suffered from chronic lower back pain and a recurrence of petit mal seizures associated with epilepsy. <u>Id.</u> at 2. Plaintiff's application was denied initially, as well as upon reconsideration.[1] R&R at 1. Carter then requested an

---

[1] Carter's initial application was denied on August 8, 2008. Certified Administrative Record ("R") at 25-27. Carter's request for reconsideration was filed on October 22, 2008 and denied on March 11, 2009. <u>Id.</u> at 29-31.

1

administrative hearing, which was conducted via video conference on May 19, 2010. Id. at 1; see also R. at 13. Following the hearing, Administrative Law Judge ("ALJ") Barbara Powell concluded that Carter was not disabled within the meaning of the Social Security Act, and denied Plaintiff's claim for disability benefits. R. at 10-22. The Appeals Council denied review of the ALJ's decision on the merits.[2] R. at 5-8. On December 19, 2011, pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action, seeking judicial review of the Commissioner's final decision. The parties filed cross motions for summary judgment, which were addressed by the R&R, filed on October 16, 2012. Doc. 13. Plaintiff filed its Objections to the R&R on October 25, 2012. Doc. 14. Defendant filed its Response on November 6, 2012. Doc. 15. This case is now before the Court for disposition of the R& R.

B. *Factual Background*

Plaintiff objects to the recitation of the factual background set forth in the R&R; consequently, the Court has reviewed the Certified Administrative Record and summarized the relevant facts below.[3]

Plaintiff Carter is a middle-aged woman that was employed as a patient escort from 2004 until 2006. R. at 60, 100, 307, 84. This position involved transporting patients on stretchers or in wheelchairs, as well as assisting patients to and from their beds. R. at 85. In July 2006, an 850-pound patient fell on Carter and injured her. R. at 307-08. Since the accident, Carter alleges that she suffers from chronic lower back pain and a reoccurrence of petit mal seizures. R. at 309. She subsequently submitted an application to the SSA seeking disability benefits for these injuries, but was denied initially and upon reconsideration. R&R at 1. Carter then requested an administrative hearing, which was held on May 19, 2010. R. at 13.

---

[2] This meant that the Commissioner adopted the ALJ's decision as its final decision.
[3] Plaintiff's specific factual objections are briefly addressed in the analysis portion of this Order.

2

### i. The Administrative Hearing

Plaintiff's objections to the R&R rely on comments made by the ALJ during the May 19, 2010 hearing that were related to previous postponements of Carter's hearing date. The hearing was initially scheduled for October 28, 2009 in Newcastle, Delaware, but was rescheduled because the hearing was mistakenly scheduled at the incorrect location. R. at 40, 299. The second hearing, set for November 25, 2009, was cancelled because the ALJ was unavailable. Id. The hearing was rescheduled a third time for February 8, 2010, but was postponed because of inclement weather. Id. The ALJ's comments at the May 19, 2010 hearing, however, suggest that she was unaware of this history and that she attributed the delays to Carter and her counsel. R. at 316-18.

Halfway through the hearing, while examining Carter, the ALJ brought up the delays in Carter's case. R. at 316. In a comment unrelated to the subject of her inquiry, the ALJ noted the several delays and referred to Carter as "something of a record-setter." R. at 317. The ALJ then inquired about the cause of the postponements, to which Carter responded that she had no idea, but alluded to the weather as a cause. Id. The ALJ replied,"[n]ow don't tell me you don't have any idea," and "[t]he weather? Oh, Ms. Carter." Id. The ALJ continued, noting the expense and time associated with re-scheduling a hearing. Id.

At this point, Carter's counsel attempted to interject, but the ALJ responded that she was typing and would get back with him. Id. Carter then attempted to speak, but the ALJ cut her off and stated, "[n]ow, now please - now whoa, whoa, Ms. Carter." Id. The ALJ continued, "I'm being very generous in, in letting you talk, but usually I ask the question and you're ~ please, if you've ever been to court before, give me the same courtesy you would give to a federal judge . . . and wait to ask if you can speak." R. at 318. The ALJ then went on a brief tangent, noting that

3

there are more than 750,000 people waiting for hearings, and that she is under a lot of pressure from administrators to hear and decide these cases quickly. Id. To this point, the ALJ declared, "I get nasty notices from the administrators about: why are you holding that case up? And then I get to write a novel on why I'm not holding the case up." Id.

The hearing then proceeded normally with Carter's counsel examining Carter. R. at 319-22. The Vocational Expert testified next, and the ALJ presented her with three hypotheticals. R. at 323-26. Carter's counsel also examined the Vocational Expert and presented a hypothetical that appeared to be the same as the ALJ's third hypothetical. R. at 325-26, 329-30. When the ALJ brought this to counsel's attention, he stated that he was trying to emphasize the RFC limitations found by Dr. King, a treating physician. R. at 330. He also acknowledged that the ALJ's last hypothetical had also encompassed Dr. King's findings. Id.

The ALJ then observed, if there was nothing further, she would close the hearing because she was already behind schedule. Id. In concluding, the ALJ stated that she found the hearing to be meaningful and "really appreciate[d] everybody's cooperation and candor in the hearing." Id. She then informed Plaintiff that at this point she planned to go through Plaintiff's file for a final review. Id. She disclosed, "I do not know how I'm going to decide the case," but promised that she would be review the file very closely. R. at 330-31. The ALJ thanked Carter for coming in, stating it had been a pleasure to meet her. R. at 331. Then, after she thanked counsel for doing an excellent job, counsel attempted to readdress the ALJ's apparent misunderstanding concerning the delay issue. Id. The ALJ replied, "I don't see what that could possibly have to do with the determination of the case." Id. She again reiterated that she is under pressure to hear cases quickly. Id.

4

Carter's counsel again attempted to speak, at which point the ALJ cut him off and instructed him on the concerns of rescheduling hearings due to the costs and number of applicants waiting. R. at 331-32. As a part of this discourse, the ALJ made a seemingly unrelated reference that a representative does the client no favor by asking for a continuance. R. at 332-33. She went on, apparently referring to another matter entirely, "she was really out of line to have asked for such a thing, and she did not get a postponement. The way I was brought up, the law school I went to, a court hearing date, you know that's pretty critical. As you feel the same way." R. at 333. After a brief acknowledgment by counsel that he felt the same, the ALJ noted she had been hearing cases all day and needed to move on to the next hearing. Id.

The next day, Carter's counsel wrote a letter to the ALJ objecting to the conduct of the hearing. R. at 138-39. There is no evidence that the ALJ responded to the letter, and she issued her decision approximately three weeks later on June 25, 2010. R. at 10-22. Carter appealed the ALJ's decision to the Appeals Council, contending that the conduct of the hearing denied her due process. R. at 296-302. The Appeals Council referred some of Carter's allegations for a separate review, but affirmed the ALJ's decision on the merits. R. at 6.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by

5

substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation mark omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (quoting Craig, 76 F.3d at 589) (internal quotation mark omitted) (final alteration in original). Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

### III. ANALYSIS

Carter disagrees with the ALJ's conclusion that she is not eligible for Social Security Disability Benefits, because Carter has the residual functional capacity ("RFC") to perform medium work (albeit not her past relevant work) with specified limitations to avoid dangerous height and machinery, ladders, ropes, scaffolds, concentrated exposure to heat, humidity changes, gases, fumes, and vibrations. R&R at 16; see also R. at 15-21. In her motion for summary judgment, Carter argues primarily that the hearing before the ALJ violated her due process rights, as the ALJ's bias deprived her of a full and fair hearing. Carter also argues that the ALJ erred in determining her RFC by: (1) failing to give proper weight to the opinion of one of Carter's treating physicians, Dr. King; and (2) not supporting with substantial evidence the

ALJ's finding that Carter's testimony was "not credible." Doc. 9 at 16-18; Doc. 12 at 10-12; R&R at 17.

In the R&R, the Magistrate Judge rejects Carter's arguments and recommends that the ALJ's decision be affirmed, first, because Carter failed to establish that the ALJ's conduct at the hearing, while intemperate, evidenced any impartiality or bias against Carter. Second, the Magistrate Judge found that the ALJ's conclusions as to the weight of Dr. King's opinion were supported by substantial evidence, and thus, must be upheld. R&R at 20. Finally, the Magistrate upheld the ALJ's evaluation of Carter's credibility, after finding that the ALJ had performed the required analysis, and had articulated numerous reasons for not fully crediting Carter's statements. R&R at 23.

In her objections to the R&R, Carter requests that the R&R not be adopted, and that the Commissioner's denial be reversed or remanded for the following reasons: (1) because the Magistrate Judge's findings regarding the conduct of Carter's hearing by the ALJ are not fairly supported by the factual record; and (2) because the ALJ's conduct in Carter's hearing violated Carter's right to due process. Doc. 14 at 1, 7.

*A. The Magistrate Judge's Factual Recitation of the ALJ's Conduct of the Hearing is Consistent with the Record*

As noted above, Plaintiff takes issue with the Magistrate Judge's characterization of the facts surrounding the conduct of the administrative hearing. Doc. 14 at 1. Specifically, Plaintiff objects to: (1) the description of the ALJ's comments regarding delay as "excerpts" of the hearing; (2) the Magistrate Judge's statement that the ALJ may have misunderstood the cause of the delays; and (3) the description of the ALJ's statements to Carter regarding the delay as "casual." Id. at 1-6. In general, Plaintiff believes the Magistrate Judge understates the significance of Carter's interaction with the ALJ regarding the postponed hearings, which

7

Plaintiff alleges caused the Magistrate to misunderstand the extent to which the interaction compromised the ALJ's ability to be impartial.

First, Plaintiff contends that the ALJ's comments regarding postponed hearings and delay were not excerpts, as they constituted twenty (20) percent of the hearing record.[4] Id. at 1-2. Plaintiff asserts that this percentage suggests that the delay became a focus of the hearing. Id. at 2. However, Plaintiff's argument is not supported by the Record. Review of the Record reveals that the ALJ's focus on Carter's delayed hearings is limited to four pages of the transcript, approximately thirteen (13) percent of the record. See R. at 316-18, 331-32. Indeed, the ALJ's last statements about delayed hearings were made in response to Plaintiff's counsel, who attempted to return the ALJ's focus to the issue. Moreover, these statements appear to be complaints about another case entirely. R. at 332-33. In fact, the majority of the hearing was spent developing the record regarding Carter's disability. See R. 305-16, 319-30, 332-34. Finally, the Record indicates that the hearing was significantly longer than those typically held by the ALJ. R. at 330 ("I normally hear cases in 40 minutes. Somehow a number of people got an hour and a half out of me."). Thus, this Court finds that the Magistrate Judge accurately characterized the discussion of delay as excerpts of the record.

Plaintiff's second and third arguments fail for the same reason — because Plaintiff's objections are about semantics, rather than content. Plaintiff argues that rather than merely misunderstanding the cause of delays, the ALJ was "operating under a totally erroneous and incorrect understanding as to why the claimant's hearing had been postponed." Doc. 14 at 2. Plaintiff also contends that the R&R's description of as the ALJ's comments as "casual" is incorrect, because the ALJ's behavior suggested that the ALJ viewed the postponements as

---

[4] Plaintiff arrives at this number by counting each page of the hearing transcript where any mention of delaying a hearing is made. By Plaintiff's count, six (6) pages of a thirty-one (31) page transcript contain a tangential discussion about delayed hearings. Doc. 14 at 1-2.

"quite a serious matter." Id. at 3. Here, Plaintiff's arguments are focused on word choice rather than content. While the R&R may use language that in Plaintiff's view diminishes the import of the ALJ's comments, the R&R accurately relays the ALJ's comments regarding delays of Plaintiff's SSI hearing. R&R at 3-4. To allay Plaintiff's concerns, however, this Court has reviewed the transcript of the proceeding, and has crafted a summary of the factual circumstances surrounding the hearing. See supra part IB.

Because Plaintiff's objections to the factual background of the R&R lack merit, we move to Plaintiff's substantive claim.

### B. *The ALJ's Conduct of the Hearing Did Not Violate Carter's Due Process Rights*

The right to procedural due process applies to administrative hearings as it does in judicial proceedings. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Gibson v. Berryhill, 411 U.S. 564, 572 (1973). "[A] 'fair trial in a fair tribunal is a basic requirement of due process.'" Withrow v. Larkin, 421 U.S. 35, 46 (1975) (quoting In re Murchison, 349 U.S. 133, 136 (1955)). "An impartial decision maker is an essential element of due process." Bowens v. N.C. Dept. of Human Res., 710 F.2d 1015, 1020 (4th Cir. 1983) (quoting Goldberg v. Kelly, 397 U.S. 254, 271 (1970)).

Judicial review of a claim of bias is appropriate in a Section 405(g) proceeding. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). Indeed, because the ALJ plays a particularly active role in social security cases, the need for impartiality is particularly important; "ALJs have a duty to develop a full and fair record in social security cases." Id. at 902. "An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.

Because administrative decisionmakers are entitled to the same "presumption of honesty and integrity" as judicial decisionmakers, however, an ALJ will not be disqualified for bias

9

"absent a showing of bias stemming from an extrajudicial source." Morris v. City of Danville, Va., 744 F.2d 1041, 1044-45 (4th Cir. 1984) (quoting Withrow, 421 U.S. at 47); see also Bowens, 710 F.2d at 20 ("To be disqualifying, personal bias must stem from a source other than knowledge a decision maker acquires from participating in a case."). Moreover, "actual bias or a high probability of bias must be present before due process concerns are raised[.]" Simpson v. Macon County, N.C., 132 F. Supp. 2d 407, 411 (W.D.N.C. 2001) (quoting Marshall v. Cuomo, 192 F.3d 473, 484 (4th Cir.1999)). The plaintiff bears the "heavy burden" of proving bias or a high risk of bias. Simpson, 132 F. Supp. 2d at 411.

Here, Plaintiff argues that the ALJ's bias towards Plaintiff and Plaintiff's Counsel was verbalized on the record, during the ALJ's comments about delayed and postponed social security hearings. To make this argument, Plaintiff relies upon the R&R's description of the ALJ's comments during the hearing as "intemperate," "rude," "impolite," and "unwarranted," and contrasts these comments to Third Circuit authority stating:

> [a]pplicants for social security disability payments, most of whom are truly ill or disabled, are entitled to be treated with respect and dignity no matter what the merits of their respective claims. . . . Notwithstanding and recognizing the time pressures imposed upon those hearing the huge volume of such claims, rudeness, impatience, or outright bias cannot be tolerated.

Ventura, 55 F.3d at 901. In Plaintiff's view, the ALJ's comments in this case are analogous to the circumstances in Ventura, supporting Plaintiff's argument for relief.

However, Plaintiff's cited authority is distinguishable from Plaintiff's particular circumstances. In Ventura, the Third Circuit described the ALJ's conduct during a social security hearing as "coercive and intimidating," and "disinterested." Id. at 903. There, the ALJ hastily concluded that the plaintiff's back pain was caused by a mental impairment. Id. When the plaintiff's representative attempted to redirect the ALJ's attention to evidence concerning the

physical causes of the plaintiff's pain, the ALJ threatened to throw out the witness, and reprimanded the representative when he attempted to question the medical expert. Id. at 903-904 (quoting the ALJ as making statements such as "[w]hat's the matter with you," "you're not doing one damn thing to help him," and "wake up and smell the roses on this case."). The ALJ repeatedly indicated that she believed the plaintiff's reports of pain were emotional or psychological, and refused to hear evidence to the contrary. See Id. at 904 ("[h]is problem lies in the emotional area. . ."). The court held that the ALJ's "continuous interference with the representative's introduction of evidence of the physical causes of plaintiff's back pain violated the ALJ's duty to develop the record fully and fairly" and remanded the case for review by another ALJ. Id. at 904-05.

In the instant action, by contrast, the ALJ's line of questioning regarding the delay comprised a small portion of the hearing record, four pages by this Court's count. While the ALJ's comments were indeed rude and intemperate, they did not demonstrate the level of hostility that was shown the plaintiff in Ventura. If anything, the ALJ's comments were an inappropriate expression of frustration about trial delays and the pressure she felt to promptly hear and decide cases. R. at 318. While the ALJ's comments suggest that the ALJ did not believe Carter's explanation for the delayed hearings, at no point did the ALJ indicate that she had arrived at a conclusion regarding the credibility of Carter's testimony or any other evidence presented at the hearing. R. at 317. Rather, at the close of the hearing the ALJ informed Plaintiff that she intended to conduct a final review of the Plaintiff's file and stated that she did not know how she was going to decide the case. R. at 330. She also explicitly indicated that the discussion regarding the delays had nothing to do with the determination of the case. R. at 331. Finally, unlike the ALJ in Ventura, the ALJ's conduct did not prevent the Plaintiff from getting

11

evidence of the cause of Carter's pain on the record; it was only Plaintiff's counsel's efforts to explain the delay that were thwarted. Ventura, 55 F.3d at 904-05.

Plaintiff also argues that the ALJ's line of questioning regarding the delay revealed that the ALJ believed Carter was a liar, and thus could not be relied upon to impartially evaluate the credibility of the evidence presented in the hearing. In support of this argument, Plaintiff relies on a quote from a Seventh Circuit case, "[m]any people are . . . reluctant to undergo arduous administrative proceedings in which they are called liars . . . ." Sarchet v. Chater, 78 F.3d 305, 308 (7th Cir. 1996).

Here, as above, Plaintiff relies upon precedent that is factually distinguishable. In Sarchet, the Seventh Circuit relied upon the ALJ's serious mistakes, omissions, and the clear sociocultural bias evidenced in the record and the ALJ's opinion. Id. at 308. The court also found that the statement of reasons for denying benefits contained in the ALJ's opinion did not logically connect with the facts on the record. Id. at 307.

While the statements made by the ALJ in the instant action may have been erroneous, they were not related to a material issue, an admission made by the ALJ. R. at 331 ("I don't see what that could possibly have to do with the determination of the case."). Unlike the ALJ in Sarchet, ALJ Powell's reasons for denying Plaintiff's claim were logically connected to the evidence. 78 F.3d at 307. For example, ALJ Powell questioned the inconsistency between Dr. King's 2009 report and prior reports from Dr. King and Carter's other treating physicians. R. at 19-20. Indeed, the ALJ's opinion demonstrates that she sought to understand every nuance of the relevant facts of the case, and explained her reasons logically and impartially.

In short, Plaintiff has failed to meet the heavy burden of overcoming the presumption of honesty and integrity afforded to administrative decisionmakers. First, Plaintiff does not alleged

that ALJ's alleged bias stems from information gained outside the case or hearing. See Bowens, 710 F.2d at 20. Second, while the ALJ's statements during Plaintiff's hearing were impolite and intemperate, they did not prevent Plaintiff from fully developing the factual record. Finally, because the ALJ's stated reasons for denying Plaintiff's claim are logically connected to the evidence placed on the record and this Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]," Plaintiff cannot meet the heavy burden of demonstrating bias. Celebrezze, 368 F.2d at 642. Consequently, Plaintiff's objection that her due process rights were violated must fail.

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that the ALJ's RFC assessment was fair and based upon an impartial evaluation of all of the relevant evidence, including the objective medical records and the State Agency findings. Accordingly, the Court **OVERRULES** Plaintiff's objections, Doc. 14, and **ADOPTS**, in its entirety, the Magistrate Judge's Report and Recommendation, Doc. 13. The Court **DENIES** Plaintiff's Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **AFFIRMS** the Recommendation of the Magistrate Judge that the final decision of the Commissioner be upheld.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

*HENRY COKE MORGAN, JR.*
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: March 19, 2013